UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br> v. <br><br> SALLY AND HENRY'S DOGHOUSE, LLC, D/B/A SALLY AND HENRY'S DOGHOUSE BAR AND GRILL, <br><br> Defendant. <br> ─────────────────────── <br> And Related Cross- and Third-Party Actions. | Case No. 13-CV-2924 W (JMA) <br><br> **ORDER GRANTING THIRD-PARTY DEFENDANT DIRECTV'S MOTION TO DISMISS THIRD-PARTY PLAINTIFFS' FIRST AMENDED THIRD-PARTY COMPLAINT [DOC. 60]** |

Pending before the Court is Third-Party Defendant Directv's motion to dismiss the First Amended Third-Party Complaint ("FATPC") of Third-Party Plaintiffs Marc Bragg, Cynthia Motsch, and Sally and Henry's Doghouse, LLC, D/B/A Sally and Henry's Doghouse Bar and Grill ("TPPs"). (*See MTD* [Doc. 60].) The Court decides the matters on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons discussed below, the Court **GRANTS** Directv's motion to dismiss the FATPC.

## I. BACKGROUND

On April 8, 2014, Plaintiff J&J Sports Productions, Inc. ("J&J") filed its first amended complaint ("FAC"), alleging that TPP Sally and Henry's Doghouse, LLC ("the Doghouse") purchased the December 2012 Manny Pacquiao v. Juan Manuel Marquez, IV Welterweight Fight Program (the "Program") through an account with satellite television provider Directv, and wrongfully displayed it at the Sally and Henry's Doghouse Bar and Grill restaurant in violation of: (1) J&J's exclusive rights to the Program; (2) California Business and Professions Code § 17200; and (3) 47 U.S.C. §§ 553, 605. (*J&J FAC* [Doc. 16], ¶¶ 11, 18-20, 22.)  J&J alleges that the Doghouse "intercepted, published, divulged, and exhibited" the Program—which was allegedly "blacked out" to businesses without a commercial Directv subscription—at the restaurant for financial gain without first obtaining permission or a license. (*Id.* ¶¶ 14-17, 23-24.)

Thereafter, TPPs impleaded Directv by filing the FATPC. (*See* FATPC [Doc. 42-1].)  According to the FATPC, Directv markets and maintains electronic transmission equipment for satellite television "Services," including the Program. (*Id.* ¶ 4.)  The FATPC further alleges that "[s]ometime in 2012," Directv solicited TPPs to purchase a commercial satellite television subscription for the Doghouse. (*Id.* ¶¶ 2, 6.)  Directv then supplied, installed, and provided all satellite equipment and electronic signals to the Doghouse. (*Id.* ¶ 10.)  The FATPC appears to allege two alternative scenarios: (1) that Directv deceived TPPs by selling them a "residential" satellite television account and later "relabel[ing] or re-identif[ying]" it as "commercial"; or (2) that Directv registered the satellite television account as either "residential" or "commercial," but did not inform TPPs "how the license rights were characterized . . . when it informed and/or noticed [J&J] of the existence of the account." (*Id.* ¶¶ 8-9, 23-24.)

In the first scenario, Directv allegedly represented to TPPs that they had a "commercial" account at the Doghouse, when in fact the account was "residential." (*FATPC*, ¶ 8.)  Directv allegedly misrepresented that all content distributed to the Directv equipment installed at the Doghouse "was properly licensed by Directv with the full

knowledge and consent of any content provider." (*Id.* ¶ 14.) Under this scenario, Directv and J&J knew of and consented to the airing of the Program at the Doghouse, even if it was improperly done under a "residential" account, because (1) Directv was required to report transmission of the Program to J&J, who was required to report satellite sub-licensees to the fight's promoter, Top Rank, Inc. (*id.* ¶ 17); (2) the Program's signal authenticity and licensing compliance message on the Directv receiver was digitally transmitted to Directv and to J&J (*id.* ¶ 20); (3) J&J provided the digital data required to transmit the Program to the Doghouse through Directv (*id.* ¶ 21); and (4) J&J accepted the license fee from Directv for transmission of the Program to the Doghouse (*id.* ¶ 22).

In the alternative scenario, TPPs allege that Directv ignored their request for a "commercial" subscription and designated the satellite television account as something other than "commercial"—either in knowing concert with J&J to defraud TPPs or in reckless error. (*FATPC*, ¶¶ 23-24.) In doing so, Directv did not inform TPPs of the account's licensing restrictions, including those that applied to the Program, when it informed J&J of the existence of the Doghouse's account. (*Id.* ¶ 9.)

Under both of the scenarios proffered in the FATPC, TPPs allege that Directv "pressures its salespeople to increase sales by recklessly creating accounts without oversight such that commercial accounts are created by incorrectly, if not intentionally" mischaracterizing commercial accounts in order to entice new subscribers with lower "residential" fees. (*FATPC*, ¶¶ 36-37.) According to TPPs, Directv, its employees, and its agents misrepresent—verbally, in Internet advertising, and in writing—that Directv distributes content such as the Program to commercial entities with proper authorization. (*Id.* ¶ 38.) The FATPC describes only one unspecified "specific inquiry" by TPPs to Directv for the "terms, price, license and availability of the Program and similar programs for display." (*Id.* ¶ 39.)

On January 17, 2013, J&J threatened to file the underlying action within ten days. (*FATPC*, ¶ 27.) However, J&J waited nearly eleven months before filing suit. (*Id.*) TPPs claim to have detrimentally relied on J&J's representations as to the timing of the initial

action because they entered into new contractual obligations with Directv and now suffer "significant prejudice" in defending against J&J in the direct action and in preserving the instant third-party suit against Directv. (*Id.*)

TPPs bring six causes of action against Directv: (1) fraud and deceit as to the type of subscription Directv created for the Doghouse; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of the warranty of fitness for a particular purpose under Division II of the California Commercial Code ("CCC"); (4) violation of California Business and Professions Code § 17500 *et seq.* based on Directv's alleged false advertising; (5) violation of the California Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*; and (6) breach of contract. (*FATPC*, ¶¶ 48–103.) Directv filed the instant motion to dismiss all of TPPs' claims under Federal Rule of Civil Procedure 12(b)(6). TPPs oppose.

## II.   LEGAL STANDARD

The Court must dismiss a cause of action that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and the court must "construe them in the light most favorable to [the non-moving party]." Gompper v. VISX, Inc., 298 F.3d 893, 895–96 (9th Cir. 2002).

As the Supreme Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for

insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Generally, a court may not consider material beyond a complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider any documents specifically identified in the complaint whose authenticity is not questioned by the parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995). "[I]f a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).

## III. DISCUSSION

### A. TPPs' Claim for Fraud and Deceit

Directv contends that TPPs' claim for fraud and deceit is inadequately pleaded because it fails to state a claim and fails to meet the heightened pleading requirements set out in Federal Rule of Civil Procedure 9(b). (*MTD* 5:24–10:8.) TPPs counter that they have pleaded their fraud and deceit claim with the requisite particularity. (*Opp'n*, 6:17–7:7.) Alternatively, TPPs allude to additional relevant facts not contained within the FATPC, and request that the Court grant them leave to amend to include such facts in an amended third-party complaint. (*Id.* 5:22–6:16.)

According to California law, the elements of a fraud claim include: (1) a false representation; (2) knowledge of its falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damages. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) (citations omitted). The FATPC alleges that Directv made "express written representations regarding the type of the account it created for [TPPs] and/or the Doghouse." (*FATPC*, ¶ 49.) It also alleges that Directv later continued to make "written and verbal representations including those relating to the license rights it claimed to be authorized to sell and/or sub-licenses it could grant in connection with the Program."

(*Id.*) These representations were allegedly false because they misled TPPs as to the true classification of their Directv account as either "residential" or "commercial." (*See, e.g.*, ¶¶ 7-9, 14.) TPPs allege that the representations were "knowingly false and/or made with reckless disregard of the[ir] truth or falsity." (*Id.* ¶ 49.)

Insofar as intent to defraud and justifiable reliance are concerned, TPPs allege that the purported misrepresentations were made for the purpose of "creating greater profits for [Directv]." (*FATPC*, ¶ 49.) TPPs further allege that "Directv intended to and did cause [TPPs] and/or the Doghouse to justifiably rely on its express written and verbal representations that the account was commercial when it induced them to believe they were authorized and properly licensed to display the Program at the Doghouse." (*Id.* ¶ 54.) Directv's conduct was allegedly carried out "knowingly and maliciously because it knew that the Doghouse was a new small business and that it did not have sufficient financial resources to pay a license fee higher than the amount that Directv promised . . . the Program would cost pursuant to the subscription agreement and license Directv had issued." (*Id.* ¶ 58.) As to damages, TPPs allege to "have been damaged" as a "direct and proximate result of Directv's fraud and deceit." (*Id.* ¶ 57; *see also* ¶¶ 32, 69 (alluding to costs incurred by TPPs as a result of the underlying claims against the Doghouse).)

Still, the mere pleading of the elements of a fraud and deceit claim is insufficient to survive the instant motion. Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); see Vess, 317 F.3d at 1102 (noting that "[r]ule 9(b)'s particularity requirement applies to state-law causes of action"). Accordingly, such party must allege the "time, place, and specific content" of the fraud, as well as "the identities of the parties to the misrepresentation." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986). In addition to the "who, what, when, where, and how" of the alleged fraud, a plaintiff "must [also] set forth what is false or misleading about a statement, and why it is false." Vess, 317 F.3d at 1106 (citations and internal quotation marks omitted). Allegations of fraud that are pleaded with particularity "give defendants

notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (citations and internal quotation marks omitted).

Here, the Court agrees with Directv that TPPs have failed to satisfy the pleading standards of Rule 9(b). TPPs generally allege that Directv made "express written representations regarding the type of account it created for [TPPs] and/or the Doghouse." (*FATPC*, ¶ 49.) Later, Directv allegedly continued to make "written and verbal representations including those relating to the license rights it claimed to be authorized to sell and/or sub-licenses it could grant in connection with the Program." (*Id.*; *see also id.* ¶¶ 54–56.)

These general allegations fall short because they fail to describe the timing, source, or specific content of a single fraudulent representation. See Vess, 317 F.3d at 1102; Schreiber, 806 at 1401. The FATPC does not specify a single statement from any Directv employee or representative, and does not allege which specific statements TPPs relied upon or when they were exposed to them. See Kearns, 567 F.3d at 1126. In fact, TPPs tacitly admit that the FATPC falls short in this regard, vowing to "add more particular facts by reference to the Directv invoices" if granted leave to amend. (*Opp'n*, 7:6–7.)

In addition to the latter generalized allegations, TPPs also attempt to allege specific instances of fraud by Directv. However, each of these allegations falls short of Rule 9(b)'s requirements because each fails to allege the "who, what, when, where, and how" of the alleged fraud. See Vess, 317 F.3d at 1106. For instance, the FATPC alleges that "sometime in 2012," Directv solicited TPPs to "apply for, purchase, and subscribe to a commercial account" for the Doghouse. (*FATPC*, ¶ 6.) Yet, TPPs do not specifically allege that Directv made any misrepresentations during this solicitation. (*Id.*) It may be the case that TPPs have attempted to allege that "sometime in 2012" Directv fraudulently represented that it would create a commercial account at the Doghouse, but in fact created a residential account. But even with this generous interpretation, the claim nonetheless fails to satisfy the pleading requirement for two reasons.

First, the FATPC does not identify who made these alleged misrepresentations. This deficiency is perplexing seeing that, in their opposition, TPPs explain that they are privy to, and would supplement their claims with, the names and employee numbers of all "Directv employees that represented the account was commercial" if granted leave to amend. (*Opp'n*, 6:5–10 (providing specific names and employee numbers).) Second, TPPs also fail to identify when the fraud occurred, merely alleging that the misrepresentations continued from "the time the subscription for the Services was created"—presumably sometime in 2012—and beyond. (*FATPC*, ¶ 13.) Therefore, because TPPs fail to identify who made the alleged misrepresentations and when they made them, TPPs fraud and deceit claim is insufficient under Rule 9(b).

TPPs also allege that the Directv installation technician who visited the Doghouse somehow misrepresented the establishment's account type or programming restrictions despite knowing that the Doghouse was "obviously commercial." (*FATPC*, ¶¶ 35, 50–54.) Yet, TPPs do not provide any information as to the identity of the technician,[1] the date of the installation, or any specific representations that were made. The FATPC further states that after the installation, a screen located on the Directv equipment installed at the Doghouse displayed a message indicating that the Doghouse was authorized to receive the transmitted signal—including the Program. (*Id.* ¶ 20.) However, TPPs do not describe the on-screen message, when or how often it occurred, or when they noticed or heeded its information. (*Id.*) Thus, TPPs' installation and display allegations are likewise insufficient under Rule 9(b). See Vess, 317 F.3d at 1106.

Finally, TPPs allege that Directv misrepresented its services during one "specific inquiry" that Doghouse made to Directv for "the terms, price, license and availability of the Program and similar programs for display." (*Id.* ¶ 39.) Further details regarding this

---

[1] The Court recognizes that a plaintiff may not be required to provide this information where such plaintiff lacks personal knowledge of all the underlying facts. See Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989) (noting that the requirements of Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge"). Here, however, as noted above, TPPs appear to possess such information. (*See Opp'n*, 6:5–10.)

"specific inquiry"—such as the date, the identity or title of the Directv representative, the substance of the conversation, or whether the inquiry was made telephonically or in person—are lacking. These allegations do not include the "time, place, and specific content" of the fraud, nor "the identities of the parties to the misrepresentation." See Schreiber, 806 F.2d 1393, 1401.

In light of the above, TPPs have not stated their fraud claim with sufficient detail to satisfy Rule 9(b), and it cannot be said that Directv has been given sufficient notice of the alleged misconduct to effectively investigate or respond to TPPs' fraud and deceit claim. See Kearns, 567 F.3d at 1126. Accordingly, the Court **GRANTS** Directv's motion to dismiss Count I of the FATPC **WITH LEAVE TO AMEND**.[2]

### B.     TPPs' Claim for Breach of Warranty of Fitness for a Particular Purpose

TPPs allege that Directv breached the warranty of fitness for a particular purpose, under § 2315 of Division II of the California Commercial Code, because Directv was required to sell the satellite television subscription "with a warranty against infringement on the intellectual or other property rights of other parties." (*FATPC*, ¶¶ 68-69.) TPPs also contend that because the Doghouse account was "commercial," as opposed to "residential" as Directv claims, the CCC applies. (*Opp'n*, 5:18-22.) Directv argues that the CCC is irrelevant here because it applies only to the sale of goods. (*MTD*, 15:1-28, 16:1-2.) The Court agrees with Directv.

Division II of the CCC "applies to transactions in goods." Cal. Com. Code § 2102. Under the Code, "goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." Cal. Com. Code § 2105(1). If a transaction involves both goods and services, the court must determine whether the transaction of goods "predominates" or is merely

---

[2] Dismissals under 9(b) "should ordinarily be without prejudice" and the court should allow leave to amend "unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)).

"incidental" by looking to the "essence of the agreement." See, e.g., RRX Indus., Inc. v. Lab-Con, Inc., 772 F.2d 543, 546-47 (9th Cir. 1985).

Based on the allegations in the FATPC, TPPs' agreement with Directv was one for services, not goods. (*See FATPC*, ¶ 4.) For example, the FATPC concedes that the agreement with Directv pertained to a "subscription" for satellite television programming. (*Id.*) And, in explaining Directv's business activities, TPPs specifically refer to those activities as the "Services." (*Id.*) TPPs also allege that the equipment installed at the Doghouse—and through which the programming was sent to the Doghouse—belonged to Directv. (*See id.* ¶¶ 10, 17.) Such equipment would have been useless without Directv's satellite television services. (*See, e.g., id.* ¶¶ 4, 10.) That is, the Directv equipment was merely "incidental" to the underlying agreement, as it served as a mechanism through which Directv could provide its programming services to the Doghouse. See RRX, 772 F.2d at 546-47. Thus, the FATPC demonstrates that the predominant purpose of the agreement between TPPs and Directv was to provide a service. It follows that the CCC does not apply in this instance.

Accordingly, the Court **GRANTS** Directv's motion to dismiss Count III of the FATPC for breach of the warranty of fitness for a particular purpose **WITHOUT LEAVE TO AMEND**.[3]

### C. TPPs' Claim for Breach of Contract

The FATPC alleges that TPPs entered into a contract with Directv to pay for satellite television services—specifically, "programming and digital transmissions to the [Doghouse]." (*FATPC*, ¶¶ 99-100.) The FATPC further alleges that Directv breached the contract because the Program was not "properly licensed" for display at the

---

[3] TPPs contend that "the UCC *does* apply here because the [FATPC] alleges the Doghouse account was commercial and not residential." (*See Opp'n*, 5:18-19 (emphasis added).) This distinction is immaterial to TPPs' CCC claim because the Code's provisions apply only to transactions involving goods, regardless of whether an agreement is referred to as "commercial" or "residential." See Cal. Com. Code § 2102.

Doghouse, causing TPPs to violate J&J's licensing rights in the Program.  (*Id.* ¶ 101.) Directv argues that TPPs fail to identify any contract or any term of the alleged contract that Directv breached.  (*MTD*, 10:16–26.)

### 1. The contract

Under California law, the elements required for a breach of contract claim are: (1) a contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) damage to the plaintiff.  <u>McDonald v. John P. Scripps Newspaper</u>, 210 Cal. App. 3d 100, 104 (1989) (citation omitted).  "Under the federal rules, a plaintiff may set forth the contract verbatim in the complaint or plead it, as indicated, by exhibit, or plead it according to its legal effect."  <u>Boland, Inc. v. Rolf C. Hagen (USA) Corp.</u>, 685 F. Supp. 2d 1094, 1102 (E.D. Cal. 2010) (citations and internal quotation marks omitted).

Directv argues that the FATPC fails to "identify a particular contract or breach and thus fails to allege a contractual relationship." (*MTD*, 11:16–18.) TPPs counter that "[b]y alleging that Directv created the account, provided, billed and was paid for the services, [TPPs] have at the least reasonably inferred the basic subject matter of the commercial contract between the parties." (*Opp'n*, 4:1–3.) Although the contract-related allegations in the FATPC are inartfully pleaded, they do appear to allege the legal effect of a contract between the parties—albeit in a rudimentary sense.

According to the FATPC, "some or all of [TPPs] had a contract with Directv for satellite television service, and for purchase of the Program." (*FATPC*, ¶ 99.) The FATPC then alleges that "[t]he contract expressly and/or constructively required Directv to provide for programming and digital transmissions to the 3515 5th Avenue address that were paid for by [TPPs] and/or the Doghouse." (*Id.* ¶ 100.) Thus, as currently pleaded, the FATPC alleges the existence of a contract that required Directv to provide satellite television programming to TPPs in exchange for payment.

//
//

     2. *The FATPC's allegations of the specific contract terms and breach thereof*

Next, Directv contends that "Doghouse's breach of contract claim fails because it fails to point to a term of the contract that was breached [by] Directv." (*MTD*, 10:14–15; *see also Reply* [Doc. 72], 5:6–9.) TPPs' response to this point is confusing. In their opposition, TPPs contend that whether their contract with Directv was a commercial contract or a residential contract is a disputed issue of material fact. (*Opp'n*, 4:9–11.) TPPs further contend that the "Directv Customer Agreement" attached to Directv's motion does not constitute the parties' agreement. (*See id.* at 4 n.2 (citing *Ex. A to Raney Decl.* [Doc. 60-2]).) TPPs seem to have missed the point.

As mentioned above, a plaintiff bringing a breach of contract claim in federal court "may set forth the contract verbatim in the complaint or plead it, as indicated, by exhibit, or plead it according to its legal effect." Boland, Inc., 685 F. Supp. 2d at 1102 (E.D. Cal. 2010) (citations and internal quotation marks omitted). In order to adequately plead a contract by its legal effect, a plaintiff must allege the substance of its relevant terms. N. Cnty. Commc'ns Corp. v. Verizon Global Networks, Inc., 685 F. Supp 2d 1112, 1122 (S.D. Cal. 2010) (citing McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1489 (2006). Thus, "[t]he complaint must identify the specific provision of the contract allegedly breached by the defendant." Donohue v. Apple, Inc., 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012) (citation omitted). Moreover, to determine if the plaintiff has sufficiently alleged a breach, courts examine the terms of the agreement in conjunction with the plaintiff's allegations as to what the defendant did or did not do. See Lyons v. Coxcom, Inc., 718 F. Supp. 2d 1232, 1238–39 (S.D. Cal. 2009).

Here, as Directv points out, the FATPC merely alleges that Directv and TPPs had a contract "for satellite television service, and for purchase of the Program," and that the contract "expressly and/or constructively required Directv to provide for programming and digital transmissions to the 3515 5th Avenue address that were paid for by [TPPs] and/or the Doghouse." (*FATPC*, ¶¶ 99–100.) The FATPC does not allege that Directv breached this term. Instead, it alleges that "Directv breached the parties' contract in a

manner that directly and/or substantially caused [TPPs] to allegedly violate [J&J's] license rights, the foreseeable consequences of which was Plaintiff['s] institution of this lawsuit." (*Id.* ¶ 101.) However, the latter allegation is not linked to any specific provision of the contract that Directv is alleged to have breached. See Donohue, 871 F. Supp. 2d at 930. Thus, the FATPC fails to provide a clear factual basis for the Court to determine what Directv did or did not do *vis-à-vis* the alleged contract.[4]

Accordingly, the Court **GRANTS** Directv's motion to dismiss Count VI of the FATPC for breach of contract **WITH LEAVE TO AMEND**.

### D. TPPs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

In the FATPC, TPPs allege that Directv breached the implied covenant of good faith and fair dealing by creating the wrong type of account for the Doghouse, by failing to prevent the Doghouse from allegedly infringing upon the rights of J&J, and by representing to TPPs that the Doghouse had a lawful right to air the Program. (*FATPC*, ¶ 63.) In its motion, Directv contends that TPPs' claim for breach of the implied covenant must fail even if TPPs have identified a contract because Directv did not fail to perform any of its contractual obligations. (*See id.* 13:9–14:7.) TPPs counter that the FATPC in fact alleges a breach of the implied covenant after formation of the contract because the FATPC "alleges that Directv continued to falsely represent that the

---

[4] The FATPC generally "incorporate[s] all prior allegations and responses in [TPPs'] Answer, Affirmative Defenses, and Counterclaim filed at the above docket number at this point in full." (*FATPC*, ¶ 2.) TPPs' blanket incorporation of all such prior allegations is far from specific, and the Court declines to scour the record to infer which contract, if any, Directv breached. Eventually, in their opposition to the instant motion, TPPs refer to three exhibits attached to their own motion to dismiss Directv's counterclaim, which they claim to be the operative agreements. (*Opp'n*, 4 n. 2.) However, these documents are not cited or mentioned in the FATPC. Therefore, because TPPs incorporate materials beyond the FATPC that are not specifically identified and whose authenticity may be in dispute, the Court will not examine these documents to look for the existence of a contract to supplement TPPs inartfully pleaded claim. See Hal Roach Studios, 896 F.2d at 1555 n.19; Fecht, 70 F.3d at 1080 n.1.

Doghouse account was commercial in nature and/or was authorized to receive all programming and programs provided by Directv." (*Opp'n*, 5:13-17.) Directv has the better of the argument.[5]

The implied covenant of good faith and fair dealing is read into every contract and requires that parties "not to do anything which will deprive the other parties thereto of the benefits of the contract." Harm v. Frasher, 181 Cal. App. 2d 405, 417 (1960) (citations omitted). A breach of this obligation requires "something beyond breach of the contractual duty itself." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1394 (1990) (citation and internal quotation marks omitted). However, an action for breach of a contract's implied covenant of good faith and fair dealing is "limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract." Pasadena Live, LLC v. City of Pasadena, 114 Cal. App. 4th 1089, 1094 (2004) (emphasis in original) (citation omitted). For example, in Coxcom, the court dismissed a claim for breach of the implied covenant of good faith and fair dealing against an Internet service provider because the plaintiff failed to state a breach of contract claim. 718 F. Supp. 2d at 1239. The court held that under California law, where a plaintiff's claim for breach of contract fails, "her claim for breach of the implied covenant must also fail." Id.

Here, TPPs have failed to adequately allege that Directv violated any specific term of the contract. Because TPPs have failed to identify a single express contractual term that Directv allegedly violated, TPPs' claim for breach of the implied covenant must fail,

---

[5] As Directv points out, a claim for breach of the implied covenant of good faith and fair dealing can sound in tort. (*MTD*, 14:8-23.) Here, the Court examines only a contract-based theory because (1) TPPs plead a breach of the implied covenant only in connection with the contract (*see Opp'n*, 5:13-14), and (2) because a tort claim for breach of the implied covenant generally requires that "parties [be] in a 'special relationship' with 'fiduciary characteristics,'" which TPPs do not allege. See Saldate v. Wilshire Credit Corp., 268 F.R.D. 87, 106 (E.D. Cal. 2010) (quoting Pension Trust Fund v. Fed. Ins. Co., 307 F.3d 944, 955 (9th Cir. 2002)).

as it would otherwise "extend[] to create obligations not contemplated by the contract" at issue in this case. See Pasadena Live, LLC, 114 Cal. App. 4th at 1094.

Accordingly, the Court **GRANTS** Directv's motion to dismiss Count II of the FATPC for breach of the implied covenant of good faith and fair dealing **WITH LEAVE TO AMEND**.

### E.  TPPs Claim Under California's False Advertising Law[6]

In Count IV of the FATPC, TPPs assert a claim under California Business and Professions Code §§ 17500 et seq.—also known as California's False Advertising Law ("FAL"). (FATPC, ¶¶ 73-79.) Directv's challenge to TPPs' FAL claim is two-pronged. First, Directv argues that TPPs have failed to state an FAL claim because they did not plead sufficient detail about the offending advertisements or sales materials. (MTD, 17:21-18:15.) Second, Directv contends that TPPs' FAL claim sounds in fraud, and therefore must be pleaded with particularity under Rule 9(b). (Id. 18:16-26.)

As an initial matter, and as Directv points out in its reply brief, TPPs' opposition fails to address Directv's FAL-related arguments. (See Reply, 7:9-13.) This deficiency alone would support a dismissal of the FAL claim. See Johnson v. Homecomings Fin., 2010 WL 3075189, *3 (S.D. Cal. Aug. 5, 2010) (citing City of Arcadia v. EPA, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003)) (plaintiff's failure to address defendant's arguments set forth in a motion to dismiss resulted in waiver of any opposition thereto). Nevertheless, the Court will briefly address the deficiencies of the FAL claim below.

"The FAL proscribes the dissemination of statements that are 'untrue, misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'" In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation, 758 F. Supp. 2d 1077, 1093 (S.D. Cal. 2010) (quoting Cal.

---

[6] Count IV of the FATPC is entitled "California Unfair Practices Act & Fraud in Advertising." However, under this count, the FATPC only alleges violations of California's False Advertising Law ("FAL"), California Business and Professions Code § 17500 et seq. Thus, the Court's discussion is limited to the violations of the FAL alleged in Count IV.

Bus. & Prof. Code § 17500). "This provision has been interpreted broadly to embrace not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Id. (citations and internal quotation marks omitted).

FAL claims are subject to the notice pleading standards set forth in Federal Rule of Civil Procedure 8(a), which require that claims be alleged with "reasonable particularity." In re Sony, 758 F. Supp. 2d at 1093 (citations and internal quotation marks omitted) (dismissing a plaintiffs' FAL claim under both Rule 9(b) *and* "Rule 8's more lax pleading standards" because the complaint "failed to identify specific advertisements, when and where they were shown, or why they were untrue or misleading"). Where a plaintiff alleges fraud as a basis for a violation of the FAL, however, the fraud must be alleged with the requisite particularity under Rule 9(b). Id.

Here, the FATPC fails to identify any specific advertisements and fails to allege when they were distributed or publicized. See 758 F. Supp. 2d at 1093. Instead, TPPs refer generally to "paper advertisements and advertisements over the Internet" wherein Directv "failed to disclose that [its] sale of the Program required a separate, hidden license fee. (*FATPC*, ¶¶ 73–79.) Without the "reasonable particularity" required of TPPs' pleading under Rule 8(a), Directv is without adequate notice of the purportedly misleading advertising. See id. In other words, because TPPs have not alleged "the underlying element" of a false advertising claim—that is, a *specific* advertisement—their FAL claim is insufficient. VP Racing Fuels, Inc. v. Gen. Petroleum Corp., 673 F. Supp. 2d 1073, 1088 (E.D. Cal. 2009) ("The underlying element of a false advertising claim is some type of advertising statement.").

Moreover, as Directv points out, the caption of Count IV of the FATPC includes the phrase "*Fraud* in Advertising." (*FATPC*, 20:11–12 (emphasis added).) Additionally, some of the allegations under the FAL claim—as well as many other allegations incorporated into the FAL claim by reference—allege fraudulent acts on behalf of Directv. (*See FATPC*, ¶¶ 33–35, 42, 49, 56, 58, 87, 78–79.) Under Rule 9(b), these allegations

1  of fraud "must state with particularity the circumstances constituting fraud or mistake."
2  Fed. R. Civ. P. 9(b).  However, similar to the Court's explanation above with regard to
3  TPPs' claim for fraud and deceit, the allegations of fraud relating to the FAL claim fail
4  to state the "time, place, and specific content" of the purported fraud.

5  Accordingly, the Court **GRANTS** Directv's motion to dismiss Count IV of the
6  FATPC for violation of the FAL **WITH LEAVE TO AMEND**.

### F. TPPs' UCL Claim

Lastly, Directv contends that TPPs' UCL claim fails because such a claim requires an underlying wrong, and TPPs have failed to "satisfy this threshold requirement." (M*TD*, 7:14–18 (citing Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1199–1200 (E.D. Cal. 2010).)  TPPs' opposition to Directv's UCL-related contentions is virtually non-existent.  (*See Opp'n*, 5:5–7.)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  "Because the statute is written in the disjunctive, it applies separately to business acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent," Jensen, 702 F. Supp. 2d at 1199 (citing Pastoria v. Nationwide Ins., 112 Cal. App. 4th 1490, 1496 (2003), meaning that each of these prongs "'is a separate and distinct theory of liability.'"  Id. (quoting Kearns, 567 F.3d at 1127).

With regard to the "unlawful" prong, the UCL "borrows violations of other laws" and makes them "independently actionable."  Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999) (citations and internal quotation marks omitted). The "unfair" prong prohibits any business act or practice that is contrary to "established public policy or . . . is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."  McKell, 142 Cal. App. 4th at 1473 (citations omitted).  Alternatively, a claim under the "unfair" prong must "be tethered to specific constitutional, statutory, or regulatory provisions."  Holomaxx Techs. v.

Microsoft Corp., 783 F. Supp. 2d 1097, 1108 (N.D. Cal. 2011) (citation and internal quotation marks omitted). As to the "fraudulent" prong, fraudulent acts actionable under the UCL are defined as acts likely to deceive members of the public. Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1152 (9th Cir. 2008) (citation omitted). Claims asserted under the "fraudulent" prong must comport with the pleading standards of Rule 9(b). See, e.g., Kearns, 567 F.3d at 1122.

The FATPC alleges, *inter alia*, that Directv violated, and continues to violate, the UCL by intentionally misrepresenting or improperly designating the classification of its customers' accounts, as well as concealing terms or details regarding licensing rights for various content that Directv provides to its customers. (*FATPC*, ¶¶ 81–93.) The FATPC further alleges that Directv, along with J&J, has "created a strict pricing model for the licensing of the Program which . . . confuses the general public as a result of the concealed terms and license rights [and] inhibits competition in the marketplace." (*Id.* ¶ 92.) Despite these allegations, TPPs' UCL claim fails for the following reasons.

To the extent that the FATPC attempts to bring a claim under the "unlawful" prong, TPPs have failed to state any of their above-discussed claims against Directv, and they and have not alleged a violation of any other provision of law. Thus, no underlying unlawful act exists for the UCL to "borrow." To the extent that TPPs attempt to bring a claim under the "fraudulent" prong, the FATPC fails to plead the alleged fraud with the requisite particularity under Rule 9(b) as discussed above.

To the extent that TPPs attempt to bring a claim under the "unfair" prong, TPPs do not make mention of a specific established public policy. TPPs also fail to explain how Directv's alleged conduct is immoral, unethical, oppressive or unscrupulous in manner injurious to consumers, or how such conduct outweighs its benefits. (*See, e.g.*, *FATPC*, ¶ 94 (stating formulaically that "[t]he anticompetitive effect of this restraint outweighs any beneficial effect on competition"). Moreover, TPPs have not tethered their UCL claim to a specific constitutional, statutory, or regulatory provision.

//

      Accordingly, the Court **GRANTS** Directv's motion to dismiss Count V of the FATPC for violation of the UCL **WITH LEAVE TO AMEND**.

### III.   CONCLUSION & ORDER

      For those reasons stated above, the Court **GRANTS** Directv's motion to dismiss the FATPC (Doc. 60) **WITHOUT LEAVE TO AMEND** Count III, and **WITH LEAVE TO AMEND** Counts I, II, IV, V, and VI. If TPPs choose to file a second amended third-party complaint, they must do so on or before **September 7, 2015**

      **IT IS SO ORDERED.**

DATED: August 7, 2015

_____
Hon. Thomas J. Whelan
United States District Judge